IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL KREITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 1593 |
| v. ) | |
| ) | Judge John Z. Lee |
| AMERICAN AIRLINES, ) | |
| INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On February 24, 2019, Michael Kreith was kicked off an American Airlines, Inc. ("American") flight departing from O'Hare International Airport and placed on American's no-fly list, after an incident that occurred while boarding. According to Kreith, American falsely accused him of making a bomb threat and being intoxicated, thereby defaming him and causing him to lose his job at the airport. Before the Court is American's motion to dismiss Kreith's amended complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the motion is granted in part and denied in part.

### I. Background[1]

On February 24, 2019, Kreith was employed by L3Harris Technologies ("L3Harris") as a field service technician, working on security equipment at O'Hare. 1st Am. Compl. ¶ 3, ECF No. 1-1. L3Harris purchased a ticket for Kreith on an

---

[1] When considering a motion to dismiss, the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

American flight departing from O'Hare at 3:10 p.m. on the afternoon of the 24th so that he could attend a mandatory training program in Washington, D.C. the following day. *Id.* ¶ 4.

Kreith arrived at O'Hare for his flight at about 1:15 p.m., met briefly with his supervisor, who was also flying to D.C., and had a beer at a bar before heading to his gate. *Id.* ¶ 5. He boarded the plane in the last boarding group, just after throwing out the balance of his beer. *Id.* ¶ 6. Onboard, Kreith attempted to place his carry-on bag in an overhead bin in first class, but struggled to find space due to jackets that other customers had tossed in haphazardly. *Id.* ¶ 7. At one point, Kreith muttered "fucking jacket" to himself under his breath. *Id.*

Kreith then proceeded to his assigned seat in row 26, near the back of the plane. *Id.* ¶ 8. About five minutes later, a flight attendant came by and asked Kreith to leave the airplane. *Id.* ¶ 9. Though unaware of the reason why, Kreith cooperated and exited the plane. *Id.* After waiting for another five minutes outside the door of the aircraft to receive an explanation, Kreith walked down the rampart to the gate counter. *Id.* ¶ 10. There, an American agent told Kreith that he had been asked to leave the flight "for using an obscenity on the aircraft." *Id.* ¶ 12. Kreith explained that he had to be in Washington, D.C. for a training the next day, and the agent rebooked him on another American flight scheduled to depart a few hours later that evening. *Id.* ¶ 13.

While awaiting his next flight, Kreith asked two other American agents if he could register a complaint for being removed from the earlier flight, but neither gave

2

him an answer. *Id.* ¶¶ 14–15. As Kreith was walking to the second gate, another American employee asked him whether he was the customer who wanted to lodge a complaint. *Id.* ¶ 16. When Kreith answered in the affirmative, the employee informed him that, in fact, he would not be permitted to fly on any American flight. *Id.* ¶ 16. Pressed for an explanation, the employee whispered into Kreith's ear, "because you made a bomb threat." *Id.* ¶ 17. Kreith denied having made any kind of threat, walked away, and called his supervisor, who booked Kreith on a United Airlines flight for 7:30 that evening. *Id.* ¶ 18. The flight ultimately departed at 9:30 p.m., with Kreith onboard. *Id.* ¶ 20.

Kreith returned from Washington, D.C. on February 27, 2019. *Id.* ¶ 21. While walking through O'Hare, he ran into a Transportation Security Administration ("TSA") agent whom he knew from performing his maintenance duties at the airport. *Id.* ¶ 22. The TSA agent told Kreith that she had heard that an email had been circulated bearing his photograph and stating that he had been intoxicated at the airport. *Id.* ¶ 23. When Kreith later reported back to work, a Human Resources employee at L3Harris told him that American had informed the company that Kreith "had made a bomb threat in the airport," and that Kreith was suspended pending further investigation of the incident by American. *Id.* ¶ 24. Based on that accusation, L3Harris terminated Kreith's employment on July 24, 2019. *Id.* ¶ 25. Kreith later learned that American had in fact sent an email to the TSA containing his photograph and stating that he had been intoxicated at the airport. *Id.* ¶ 26.

Based on these facts, Kreith brings four common law tort claims against American. *See id.* ¶ 2. Count I claims that American intentionally interfered with Kreith's employment with L3Harris; Counts II and III allege defamation *per se* and defamation *per quod*, respectively; and Count IV claims intentional infliction of emotional distress ("IIED"). *See id.* ¶¶ 27–30. American seeks to dismiss all four claims under Rule 12(b)(6). *See* Def.'s Mot. Dismiss, ECF No. 22.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Moreover, while courts "must take all of the factual allegations in the complaint as true" for purposes of a motion to dismiss, they are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare

4

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim on which relief can be granted. *Iqbal*, 556 U.S. at 678.

### III. <u>Analysis</u>

American raises four primary arguments. First, American contends that Kreith misconstrues and misrepresents the statements that it made to L3Harris and the TSA about his conduct on February 24, 2019. Alternatively, American asserts that its statements are shielded from defamation by qualified privilege. Barring that, American insists that its statements to the TSA are immune from civil liability under the Aviation and Transportation Security Act ("ATSA"). Lastly, American submits that Kreith's IIED claim is preempted by the Airline Deregulation Act ("ADA"). The Court addresses each argument in turn.

### A. Meaning of the Allegedly Defamatory Statements

Under Illinois law, "[d]efamation is the publication of a false statement that 'tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person.'"[2] *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (quoting *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). In the typical action for defamation *per quod*, the plaintiff must show "that the unprivileged communication" of the false statement "caused him harm." *Id.* "Some statements, however, are so obviously harmful that injury to the plaintiff's reputation can be presumed and are considered actionable *per se*." *Id.* There are five categories of defamation *per se*: "(1) statements imputing the commission of a crime;

---

[2] The parties tacitly agree that Illinois law governs Kreith's common law claims.

5

(2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication. *Tuite*, 866 N.E.2d at 121.

Relying on two affidavits that it contends to be "verified copies of its at-issue communications with [L3Harris] and the TSA," American argues that Kreith's entire complaint must be dismissed, because American did not tell L3Harris that Kreith had made a bomb threat; nor did it tell the TSA that Kreith was intoxicated. *See* Def.'s Mem. Supp. Mot. Dismiss ("Mem.") at 7, ECF No. 23. Presumably aware of the standard that the Court must apply when reviewing Rule 12(b)(6) motions, American contends that this issue can be resolved at the pleading stage because "the meaning of [an allegedly defamatory] statement is not a fact for the jury to find," or the plaintiff to allege, "but a 'question of law to be resolved by the court.'" *Lott*, 556 F.3d at 568 (quoting *Tuite*, 866 N.E.2d at 122). But this is an incorrect understanding of the law.

The "question of law" in *Lott* was whether the statements at issue were defamatory *per se* as opposed to *per quod*. *See id.* As *Lott* makes clear, the reason why a court may be called upon to construe the meaning of an allegedly defamatory statement is on account of Illinois's "innocent construction rule," which provides that "a statement that is reasonably capable of an innocent construction is not *per se* defamatory," even if it falls into one of the five categories of defamation *per se*. *Id.*; *see also Tuite*, 866 N.E.2d at 122; *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (Ill.

6

1982). It is not a justification for the Court to assess, at the pleadings stage, the truth (or untruth) of the statements' content.

Here, Kreith alleges that American told L3Harris that he "had made a bomb threat in the airport on February 24, 2019," and the TSA that he was "under the influence of alcohol" in the airport. 1st Am. Compl. ¶¶ 24, 26. Citing to its own exhibits, American disputes the accuracy of these allegations, asserting that it "did *not* publish to [L3Harris] that [Kreith] had made a bomb threat," but rather only that he dropped an "F-bomb," and that it "did *not* publish to the TSA that [Kreith] was intoxicated," or even anything similar. Mem. at 7–9. Those disagreements go to the merits of the case and cannot be resolved on a motion to dismiss.

In response, American argues that the Court can consider its exhibits under the incorporation-by-reference doctrine. That doctrine provides that "a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim" without converting the motion into one for summary judgment. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (reiterating that this is "a narrow exception aimed at cases interpreting, for instance, a contract," not a "license to ignore the distinction between motions to dismiss and motions for summary judgment" (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998))). But neither condition of the doctrine is satisfied. First, the complaint neither explicitly nor implicitly refers to any of the documents attached to American's motion. And second, rather than having any inherent legal

7

significance (such as an executed contract), American's documents merely create a factual dispute that cannot be resolved on a motion to dismiss. Accordingly, American must wait until after discovery to dispute the truthfulness of Keith's allegations.

### B. Qualified Privilege

Alternatively, Defendants argue that its alleged statements to L3Harris and the TSA are insulated by qualified privilege. Under Illinois law, "[a] privileged communication is one which, except for the occasion on which or the circumstances under which it is made, might be defamatory and actionable." *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993) (cleaned up).

The elements of qualified privilege are "(1) good faith by the defendant in making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only." *Id.* Once a qualified privilege has been established, a plaintiff may overcome it "by pleading (and eventually proving) that the statement was made with actual malice—*i.e.*, made with knowledge of its falsity or in reckless disregard of whether it is true or false." *Myers v. Phillips Chevrolet, Inc.*, No. 04 C 0763, 2004 WL 2403126, at *6 (N.D. Ill. Oct. 26, 2004); *see Krasinski v. United Parcel Serv., Inc.*, 530 N.E.2d 468, 471 (Ill. 1988); *cf. Kuwik*, 619 N.E.2d at 133 (noting that qualified privilege "is based on the policy of protecting honest communications of misinformation"). While the question of whether a qualified privilege exists is one of

8

law for the court, the question of whether the privilege has been overcome is one of fact for the jury. *Kuwik*, 619 N.E.2d at 133.

In addition, qualified privilege is an affirmative defense to defamation, not an element of a defamation claim. *Kainrath v. Grider*, 115 N.E.3d 1224, 1233 (Ill. App. Ct. 2018). And it is well established in this circuit that a complaint "need not anticipate or attempt to defuse potential defenses." *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Instead, when it comes to affirmative defenses, a complaint need only avoid "plead[ing] itself out of by court by alleging (and thus admitting) the ingredients of a defense." *Id.* As such, "unless the complaint affirmatively shows the statement is privileged, a plaintiff is not required to plead facts demonstrating that a statement is unprivileged." *United Labs., Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4557095, at *9 (N.D. Ill. Dec. 21, 2007); *cf. Dent v. Constellation NewEnergy, Inc.*, --- N.E.3d ----, No. 1-19-1652, 2020 WL 6939551, at *8 (Ill. App. Ct. Nov. 25, 2020) (holding the same with respect to motions to dismiss under Illinois's counterpart to Rule 12(b)(6)).

Here, the complaint falls short of establishing that the allegedly defamatory statements fall within a qualified privilege. To the contrary, the complaint affirmatively alleges that American made the statements maliciously, with knowledge of their falsity and intent to cause injury. 1st Am. Compl. ¶ 27; *see United Labs.*, 2007 WL 4557095, at *9. Tacitly conceding as much, American again relies on its own version of what it was said, and why. But again, facts that are neither alleged in the complaint nor incorporated by reference cannot be considered on a motion to

9

dismiss. American's "attempts to introduce at this presuit stage new facts to support its affirmative defense of a qualified privilege" are improper, *see Dent*, 2020 WL 6939551, at *8, and its invocation of qualified privilege is denied at this time.

## C. ATSA Immunity

American next contends that its allegedly defamatory statements to the TSA are immune from civil liability under the ATSA. But this argument also is unconvincing for similar reasons. Enacted "[t]o ensure that the TSA would be informed of potential threats against air travel, the ATSA provides 'airlines and their employees immunity against civil liability for reporting suspicious behavior.'" *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 241 (2014); *see* 49 U.S.C. § 44941(a). This immunity, however, "does not attach to 'any disclosure made with actual knowledge that the disclosure was false . . .' or 'any disclosure made with reckless disregard as to the truth or falsity of that disclosure.'" *Id.* (quoting 49 U.S.C. § 44941(b)).

In other words, immunity under the ATSA contains the same "actual malice" exception as qualified privilege under Illinois law. *Cf. id.* at 246–47 (tracing that standard for purposes of ATSA immunity to *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964), a seminal defamation case). Thus, the Court cannot conclude at this juncture that American's statements falls within the scope of the immunity provided by the ATSA.

## D. ADA Preemption

That leaves American's argument that Kreith's IIED claim is preempted by the Airline Deregulation Act of 1978 ("ADA"). In relevant part, that statute expressly

10

preempts any state or local "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The Supreme Court has construed this language expansively, holding that it preempts any "State enforcement actions having a connection with or reference to airline 'rates, routes, or services.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (quoting 49 U.S.C. § 41713(b)(1)). Moreover, the Seventh Circuit has defined "services" to "include such items as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)).[3]

Defendant's contend that Kreith's IIED claim relates to its service because it "is based, in part, on [American's] decision to remove [Kreith] from the airplane and refusal to rebook him." Mem. at 15; *see* 1st Am. Compl. ¶ 27(d)–(e). The Court agrees. *See Travel All Over the World*, 73 F.3d at 1434 (concluding that tort claims "based on the airline's refusal to transport passengers . . . . clearly 'relate to' the airline's provision of services"). That said, the ADA preempts Kreith's IIED claim *only* to the extent it is based on American's provision of service, *not* to the extent it relates to American's alleged defamatory statements, which do not fall under the ADA. *See id.* (allowing intentional tort claims to proceed "to the extent that they rely on . . . [the

---

[3] While *Morales* and *Travel All Over the World* dealt with a prior version of the ADA's preemption provision, the Seventh Circuit has observed that the amendment introduced "no substantive changes." *Travel All Over the World*, 73 F.3d at 1430 n.7.

11

defendant's] slanderous and defamatory comments"); *cf.* 1st Am. Compl. ¶ 27(a)–(c), (f) (basing Kreith's IIED claim on American's allegedly defamatory statements). Accordingly, to the extent that the IIED claim is based upon American's provision of service, Count IV is dismissed with prejudice. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted . . . if it is clear that any amendment would be futile.").

## IV. Conclusion

For the forgoing reasons, American's motion to dismiss Kreith's amended complaint with prejudice is granted in part and denied in part. Count IV is dismissed with prejudice to the extent it is based on American's alleged removal of Kreith from the flight and its alleged placement of Kreith on its no-fly list. In all other respects, the motion is denied, and the remaining claims in the amended complaint may proceed.

**IT IS SO ORDERED.**  ENTERED: 3/1/21

_____
**John Z. Lee**
**United States District Judge**